Well, welcome council. We wish we could all be together in the courtroom in Philadelphia, but we all know the circumstances here so we're happy to have you via zoom and we're glad you're here. So, we follow the usual rules 15 minutes per side. And I'll do, I'll do the timing I would suggest you do so as well so you don't get thrown off when your time is up. Now, first up would be a pellet. Mr Monteverde, and I, are you going to be reserving any time, sir. Yes, good afternoon. I would like to reserve three minutes if I may. Okay, that's granted. Terrific. So your, your principal argument is 12 minutes. Okay. Yes, sir. Thank you. Okay. All right, you may proceed. Okay, good, good afternoon one Monteverde with Monteverde and associates, or appellant dismissal wasn't warranted, because the complaint adequately pled that shareholders were plausibly misled by the statements in the proxy related to present values of short apply based on the sensitivity projection that defendants themselves, admit, they didn't believe in. Yet, they gave them to their banker, Morgan Stanley, in fact directed them to use them and that's on the record, a 167 to use them both with the base and the sensitivity case. And that's the problem, because what they essentially did was lower the averages of present value of shutterfly. And we don't allege that that was maliciously done, we're not saying there was malice, all we're saying and we allege is that that was just disregard or recklessness for accuracy in the proxy. That's the problem. And the court dismissal relying on the disclaimer was improper as a matter of law, adding motion to dismiss because plaintiff plausibly pled that the proxy was misleading and the language. I just stopped you for a minute, you said, I, I take it you're you're you're hewing toward toward negligence here but I'm looking at paragraph 76 of your complaint. And you, one of the things that you allege is that the, the, the sensitivity case projections were forwarded to Morgan to ensure that Morgan would provide a fairness of the opinion. Isn't that doesn't that go toward more intentional, you know that a more intentional type of, of, of, I guess state of mind if, as it were. Well, a 14 day one has no state of mind to even Suprema Your Honor had a massive fraud and discussion of conduct that was fraudulent, but because there was conduct based on negligence in focus on negligence. I would submit though, although we don't believe fraud applies or the fraud analysis applies, even under that lens. We can we check the box because we can identify right. What is the, the issue here is the projections who created them for what purpose, but I really go back to it is negligent to create a set of projection. And after you create it and you say, gee, we don't believe this is going to happen. It is negligent to give it to your banker to render a fairness opinion, and it's negligent to put it in the proxy in the total mixture of information that shareholders And, and that it's a motion to this. Yes, and the disclaimers they rely on. I don't think they satisfy the law because borrowing from from casino to offset the misleading effect of the low valuation as a matter of law. That's not a determination we can do today. We plan counsel counsel judge county here. How do you respond to the defendant's assertion that your attack on the sensitivity cases is no longer coherent, given that your decision to abandon the claims, making the disclosure relevant related to this case. Well, okay. I understand the question. I don't think we abandoned the theme of the case. And really, at the end of the day, we focus on the worst disclosure problem, which is the present valuation of the financial analysis of the banker. So we are not challenging the sensitivity case. And we're challenging the statements about the bankers analysis throughout the proxy that essentially were they formed the opinion that the shareholder should approve this transaction. I think this case is right on with Hershowitz. That's where the banker also did an analysis finding 716 was fair. The range was 650 to 850. In Hershowitz, there was an obvious misimpression given with respect to the tax situation. And we don't have that here. And I'm, I share the views of my colleagues. All the proxies specifically says about the share value ranges is that they were created by Morgan Stanley and the type of analysis that Morgan Stanley used. You don't challenge that Morgan Stanley created those ranges. And you don't challenge that they use the analysis specified. So I'm wondering whether the OFI versus Cooper case controls here and what distinguishes this factual situation from the OFI case. Yes, so OFI a couple of things. And thank you for the question, Your Honor. I think it's a very different situation. And I know Your Honor knows that better than anyone else. That was a failed merger. And then the plaintiffs came after with a 10B. That was their primary claim. And a 10B is an untrue statement as opposed to a 14A claim, which is a misleading statement. And under TST Industries, it has to be that the statement is not misleading, unless it is so obviously not misleading that no reasonable person could disagree. And the proxy is replete of financial precedent valuations of what Shutterfly's worth as of June 9, which OFI said the projections are updated and management and the company does not intend to update them. There's no language anywhere near to that here. And in OFI also the projections were not used to support the failed merger. And the analysis of the banker there were not used to support a failed merger like here. Counsel, don't you agree that a proxy statement may include alternative, unanticipated, yet plausible downward projections and valuations that this did in this case? But they were plausible, weren't they? No, they were not. And I 100% agree with your honor. They have been plausible. They said we do not anticipate them. And we know from the history of this company, they had some mixed performance in earlier quarters. And in February, when they decide to put together a management case, they know all concerns they have about the projections. Ironically, when they create a sensitivity case, your honor, is at the same time that they're reporting beating Wall Street expectations for Q1 in 2019. The projections were created right a month after they received low offers from Apollo at $48 and other bidders as low as $45. And again, we don't have to prove intent of why they created the projection. We're saying the way the proxy reads is misleading. And we know they believe on the management case, because even five days before the merger agreement is signed, its CFO is standing behind its projections at the Baird conference. Ten days earlier, standing behind at the SunTrust conference. This case is exactly like Cary versus O'Claro. I recognize it's not binding in this court. It's merely persuasive at best, which my firm is handling. And we had a very similar situation there, which is also very similar to ambition. Proxy statements need to be accurate. We don't submit that companies cannot have multiple scenarios or different scenarios. Excuse me. I'm sorry. Go ahead, Judge Sirica. I thought it was significant that one of the bases, maybe the principal basis for the sensitivity projection was that there was a possibility of a decline in both the consumer and life touch branches of the company here. And on the one hand, that there was intense competition for the first and on the second, that the demand was not there as it usually had been with the schools. So it's not just that they're throwing out a statement. They're giving reasons why they're doing it. And yet they still say, we want you to be aware of all of this because this is a situation that we have. But we still go with the management projection because we think that's the right one to go. I mean, am I misstating it? With all the respect, I would say yes, Your Honor, because the management case was prepared in late February. All that negative information, they know about it. In fact, they turned a corner. They're improving. And the sensitivity case only comes out after they get a local offer. And then they say, we don't believe this is going to happen. So why create it? Why give it to your banker to use both the management case and the sensitivity case? Let's look at the numbers, Your Honor. And the discounted cash flow analysis with the management case, you're up $55 at the bottom, $90 at the top. This is a 51 offer. You only get to that low $29 at the bottom range when you inject the sensitivity case. I'm not here to prove the case today. I also have to make a plausibly fleet a misleading statement. I do believe we have done that, Your Honor. This is a motion to dismiss. The timing is suspect. CEO wants to retire and move back to the United Kingdom. You don't have offers above or that support the ranges from your management case. You know all the negative problems about the company's previous past when you create the original set. You're now improving, and you say to the market, we don't believe in the sensitivity case, but I'm giving it to the banker. That's misleading, Your Honor. What about the disclaimers? With pages and pages of analysis, keep saying present value, present value, present value. Why is the shareholder supposed to think? And again, co-ed, summary judgment, after discovery, we're being kicked out of the case early on. And I do think we have established enough for a motion to dismiss that this case should have not been dismissed, and we would ask that it be demanded to the district court. Counsel, let me answer this. Counsel, Judge Kennedy, how could the self-styled unanticipated downside projections, valuations, whatever you want to call it, be considered material when the proxy fully disclosed the anticipated upside projection valuation and told you that, you know, that the. I mean, they said that they don't think the downside is going to happen, but they're giving you facts. It's possible, they said, you know. But I say we look for the upside valuation is what we anticipate. That's exactly the problem. It's not an omissions case. It's a misleading case. You're essentially telling the shareholders, we don't believe the sensitivity case is going to happen. But yet they do a tremendous amount of analysis, the lower devaluation. What are shareholders supposed to discount those analysis because of one sentence? This is misleading and plausibly misleading at a motion to dismiss. I submit the case proceeded to discovery. That's something we should do in discovery, not in the motion. Counsel, we have to look at these statements in context, right? It wasn't it clear that this was the downside? I mean, anybody who looks at it, I mean, I'm looking at page, I guess, 188 at it. It's clear what this is. How's that misleading? Because you're giving a downside you don't believe in to the banker to render analysis, you're lowering the averages. If I if I tell you my company is can make five dollars a month and tell me how much my company's worth with that. But by the way, also tell me what would happen if my company only makes two dollars and 50 cents. But I don't believe that's going to happen because I'm trying to sell this to someone else. What those analysis are going to yield is two different outputs, one at 100 percent, one at 50 percent. The averages, right, will not give you the true value of the company and you're going to mislead the buyer of the value. And again, this is the motion to dismiss. And we pled. We're not just coming in and say this is the case. It's not true. It's not going to happen. We have a case. We're showing reasons why the management case seems to be actually the real case. The sensitivity case wasn't the real case. We have objective evidence. And you have the rare occasion that Virginia thinks you said this is never going to happen. We're defending admits that we're disclosing something we don't believe in. We're a little bit over time here. I did. I had another question. I'm going to ask my colleagues as well. But I read your your 28 J letter with interest. And you said that he doesn't apply here because and I'm going to quote present share value ranges that issue here. We're not expressly disclaimed if they were expressly disclaimed what our case apply. Yeah, so I think even if it was expressed with this claim, I would say that one sentence would not suffice because you have 10 pages. I don't know the number, but it's like eight or 10 pages of analysis. I would have to be very clear to comply with all for you would have to say we've created analysis based on a sensitivity case. We don't believe in the actual results are irrelevant. And we're not using it for our fairness opinion. They used it for the furnace opinion, Your Honor. Okay. Judge Rica. Do you have anything more. No. Okay, Judge Cowen. Oh, well, no, no, not at this time. Okay, thank you. All right. Thank you, counsel. We'll hear now from Mr Clayton. Thank you very much, Your Honor. There were many reasons why Judge Starks opinion here should be sustained by this court, including the points you reached and several points he had no need to reach. And the basic point, I think, is there's nothing false or misleading about this proxy, the theory of the case, the basic theory, the essential allegation is here that and I you heard it again from plaintiff's counsel is that the defendants did not believe the sensitivity case. Well, that is a misconstruction of the record. The defendants stated quite accurately and repeatedly what their belief was. Their belief was that the management case best fit, not the sensitivity case, but the management case best fit their assumptions about what would happen in the life of this company. They also believed the sensitivity case. They believed that if the assumptions stated in the proxy occurred, the sensitivity case was instead the best view of where the company would come out. But importantly, what they said was, we anticipate the management case. We do not anticipate the sensitivity case. The Super Bowl was yesterday. I'm certain there were lots of Kansas City fans who believed it was very likely that their team would win at the same time as they believed it was likely their team would win. They probably recognized there was a chance that Tampa Bay would win. They believed both of those of those predictions. And this counsel counsel Judge County, but the management case already accounted for existing challenges facing center. Right. And, you know, the case took those into consideration already. So does it. Mr. Garfield said for the plausible claim that the sensitivity case projections valuation were objectively and subjectively misleading because you already had those those as part of your management case. Of course, any business we cited, for example, Chancellor Chandler's opinion from the Delaware Chancellery Court in three com. And what he said was, it's common for businesses to have different projections for different upside cases, downside cases and management cases. Here, what the proxy said was explicit. The projection that we expect that fits best our circumstance is the management projection. Indeed, when the plaintiffs look for evidence that there was a misstatement, where do they go? They say, we know they didn't believe it. Why? Because they said it in the proxy. How could it be misleading to when they said it in the proxy and plaintiff argue just now? Well, oh, you had just one sentence. There's more language disclaiming these. You know, it's bothering me a little bit about it. What should we make of the fact that the sensitivity case was developed shortly after? Yes, shortly after Apollo made its offer. I mean, it's, you know, it's, it's, is there, you know, was there some deviousness in making that sensitivity case because of the Apollo? No, no, no plausible case. Many reasons why there's no plausible case. First of all, Your Honor, there are lots of reasons why this company should be considering a downside case. In fact, it would almost be improper for them not to do so. Remember some facts that the plaintiff concedes. A year before the negotiation over this deal, Shutterfly stock was at $100. There was a time in June 2018 it touched $100. By the time they were negotiating this deal, the stock was just under $40. By the time they were negotiating this deal, they had had several quarters of missed projections. They had to take some of their targets down. During, and you asked about, is it strange that the sensitivity case was developed in the middle of the negotiations? Not at all. I think, in fact, those negotiations, as the record shows, actually spurred development of the case because if you look at the sensitivity case, it looks at two kinds of risks. One is the consumer business because their relationships with schools look like they were going down. There were some problems there. And the consumer business. Number one, this was, the plaintiff acts as if this was some invention. The record shows, and we cited in the brief, these risks, these very specific risks about LifeTouch and the consumer business had been repeatedly disclosed to stockholders before they ever got into the bidding, number one. Is that part of the record, counsel? Is that part of the record? I believe it is. Yes. Yes, Your Honor. And we cite it. We cite it in the briefs. I think it's even in the appendix. If you look at the. I think so. Yeah, I believe so. Yes, if you if you look at the 10 cues and they're there, they're in the record and give you some of those sites in a second as I shuffle through my papers. In addition, what the proxy says is that two bidders actually dropped out. In fact, I think it's two. It's three bidders actually dropped out and told the company one reason we're dropping out is we're concerned about exactly these issues. We're concerned about your consumer business. We're concerned about LifeTouch. This is a company. And if you look at the public SEC disclosures, you will see among their competitors are companies like Amazon and Google. People are taking pictures on their phones. And here we have a situation where you're sitting on the board of directors. Your stock price is down 60 percent from last year. Management has given you projections, but they've had misses. Management has told the stockholders in SEC filings you've approved of two basic risks. It would not be it would be surprising if you did not look at this. And the proxy says that this was done so they could do strategic planning, as Judge Stark said, in the circumstances of this case, if plaintiffs theory was adopted, this would be a huge problem for every every board of directors for several reasons. Number one, one thing that's very interesting. If you look at footnote three on page two of plaintiff's reply brief in this case, what they say is, well, it may be common for companies to have multiple sets of projections. That's not exactly a big concession. And that comes right out of Chancellor Chandler's opinion. But what do they say? They say in the last sentence, once you have determined the case that reflects the best estimate of future performance, even though you can consider it, they should not disseminate valuations predicated on the company's unanticipated future performance. Think about that for a second. The implication, the necessary implication of their case and their theory in this case, as they themselves said, I'm quoting them, is it's fine for the board to sit there and think about these alternatives and these risks. Indeed, life is full of risks and business is full of risks. You have to do that. It's fine to consider it. But keep it secret. Don't tell the stockholders. Well, as Judge Stark said below, if you do that now, you really will draw a case. You will. And it's a better case than the case that's made here. And ironically, if you look at the history of this case. The first time Mr. Monteverdi filed a pleading, what would that pleading say? That pleading did not say anything about the proxy being misleading because the sensitivity case was in there. It was the kind of case that is often filed in mergers. It said we want more information. You haven't told us enough about the projections. And indeed, there was a supplement to the proxy filed here that was in response to five different shareholder suits. And what did those suits ask for? They said we need more detail on all the projections, including the sensitivity projections. It's completely unrealistic to say that the company can look at these projections, which they really ought to do. And I think plaintiff is basically conceding it. But then keep it back from the shareholders. And remember, all of these projections get significant protection under the securities laws in many different ways. Number one, they are opinions. They are absolutely under Omnicare, Virginia bank shares and opinions of this court. You have to show two things, both subjective and objective falsity. So in other words, even if you say, as the plaintiffs do here, and I think it's absolutely improper to say there was something wrong with putting together these projections, you have to show. I think what Judge Cowan was getting at, and I have a question about too, is the timing. That this so-called lowball offer came in, and then all of a sudden the sensitivity case report is, I guess, produced according to your friend across the aisle to help sort of damper shareholder expectations, because that's where they all are. Two points. Number one, that's simply speculation. Number two, the proxy tells you why. The proxy tells you why. Here's what's happening. The company is involved. The board is bargaining hard with the people who are coming in. Some of the bidders are dropping out. They get down to a small number. And the board, to its credit, pushes back against Apollo. And what does the proxy say? The committee that's looking at this is a strategic committee. They're saying, what are we going to do with this company? What's the best thing to do? One issue is, and they say so repeatedly in the proxy, if we don't like these bids, we'll just go it alone. So what are they doing? They're saying, if we draw a line in the sand at a particular dollar value with these bidders and tell them to just go away, what are we left with? We're left with this company. Well, let's look at what risks this company faces. And that's exactly what the proxy says, and that's exactly why they do it. Even in April, there were two months to go, two months plus to go in the bargaining at that point. They're still bargaining. They don't know what number they're going to get from these people. What's the difference between this case and the Cary case and the Envision case? Which would say that a 14A case, go forward. Lots of differences. Number one, in Envision, they had two cases and they said two projections, and they said both are equally likely. In addition, in the Cary case, there were several significant issues. And there's a Hershkowitz case, too, where they let it go forward on a 14A. Hershkowitz is completely different because in Hershkowitz, what happened, and that's a Third Circuit case, obviously. In Hershkowitz, what happened is they said the tax rate would be 46% when the evidence was very compelling that everyone knew that the tax rate was going to be dropped. If they had done two projections there, maybe that would have been different. In Hershkowitz, what they did is they used a 46% rate for taxes when the evidence was clear that Congress was going to lower those tax rates. So, number one, they didn't do alternative projections. Number two, there was compelling evidence that an essential factual assumption was incorrect in the proxy. So, again, here… Well, you're relying completely on the fact that the sensitivity was a plausible but unanticipated event. Actually, in part, but not completely, and if I may explain why. Number one, under Omnicare and Virginia Bank shares, it's a forward-looking statement and it's an opinion. So, number one, as an opinion, you have to show not just subjective falsity, meaning, oh, you guys didn't really think it was realistic. Objective falsity, meaning, and if you look at OFI, OFI tells you what is the communication that the proxy is making. The communication the proxy is making is simply that these are the projections that were given to Morgan Stanley. Interestingly, the challenge to the projections themselves has been withdrawn. The only challenge in this case is the challenge to the so-called implied valuation ranges in the proxy. So, that's also an opinion. And the proxy, as Judge Stark found, says, number one, don't rely on these projections. Please don't rely on the projections. It says it again, and it's not one sentence. It's not buried. It's featured. There's a whole section saying projections are just guesses. Do not rely on the projections. Point one. Point two, the challenge here is to the valuation ranges. There's another section that says, number one, don't rely on the fairness opinion. The fairness opinion is just some advice your board of directors got. Nothing more. Thirdly, it says, specifically, do not take these implied valuation ranges, which is the one statement, the only statement, that Plaintiff now challenges. It says, do not rely on the implied valuation ranges as any evidence of value of the company. Exactly the argument that they say makes it misleading. What more can you do? What more can you do to warn people? They say, oh, we know you didn't believe the case because you said so in the proxy. They claim that's evidence of wrongdoing. I say that's simply reading the proxy in context. That's why they are forced to admit in their brief that the necessary implication of what they're saying is people are now going to have to leave any alternative projection out of the proxy. Someone can always come in and say, oh, you really didn't believe it based on some vague claim. And finally, you have to remember, I believe, the PSLRA, exactly to prevent frivolous securities cases, that was why Congress said they passed. It says a couple of things that are very important here. Number one, if there's a required state of mind, you've got to prove it with a strong inference. Now, they say, we say this complaint sounds in fraud. Clearly, it does. But even if you say it sounds in negligence, the argument that they say, the argument that they use to support negligence, and you find it on A53, page 53, of the appendix, it's 51 of the transcript. Mr. Monteverdi below said, explaining why this was negligent, we don't believe in the sensitivity case. But yet, we gave it to the banker to use. That was negligent. That's his argument. Now, that's his theory of the state of mind under the PSLRA that he has to prove. So this is not a situation where he can simply say, gee, someone said something in the past that was different. I found an analyst report. I found a snippet in an earnings report. What he needs to do is show a strong inference of that state of mind. He doesn't come close. I think under the Rule 8 standard, it wouldn't work. Under the strong inference standard, it cannot work. And I would also say, quite apart from all of this, Judge Stark was correct in saying, in view of the disclaimers, the levels of disclaimers, disclaimers of the projections, the fact that the objections are opinions, disclaimers of the reliance on the fairness opinion, specific disclaimers of these valuation ranges, there is no materiality here. And remember, at this point in the case, after the plaintiffs brought a claim saying, tell me more about the projections, they now focus on one line. Morgan Stanley did seven different analyses. They used the sensitivity case. They used the management case. They also used projections from analysts. And they looked at the stock price. They did all kinds of things. And they do not come up with a valuation for the company. They don't say, your company is valued at x. They simply say, we are telling the board, this is fair. That's advice that the board gets. And the board is saying, we're making our decision based on what to do. Should we stay independent? Should we take this? We did an auction. Look at all the things that we did. We're not telling you what the value of the company is. We're recommending to you, in our view, we think this deal is a good deal for you. And we're disclosing all of these facts just so you know what we did. Now to say, with all those disclaimers, with all of that explanation, two lines based on a projection the board said will not happen. It's a very strange scheme, I would say, that directors are accused of. If you want to mislead people with the sensitivity case, why say you do not anticipate that it's going to happen? Judge Sirica has a question. I'm sorry. I apologize. That's OK. Go ahead, Judge Sirica. Very quick. You make a strong argument that the PSLRA applies and that this is a fraud case. If we're not, if our conclusion were different, would Rule 9b cover this? I think Rule 9b does cover it. But I want to go back to one point you just made. I do think this is a fraud case. But if you look at B2 of the PSLRA, the strong inference section, it doesn't use the word fraud. What it says is required state of mind. And here, even if you grant their argument that they're alleging negligence, they've told us what the evidence is of their required state of mind and what that state of mind is. They have alleged, call it fraud, call it negligence, call it wrongdoing, call it recklessness. They have alleged in this case that the state of mind was we don't really believe in these projections. They therefore, because the PSLRA B2 talks about state of mind, even if they try to argue this isn't fraud, and it is fraud, and that's what Judge Stark properly found, even if that argument is carried out, they still have to come in with strong evidence. Facts showing a strong inference of that state of mind, that this projection was given for an improper reason to mislead stockholders. Otherwise, all these rules about proving fraud are completely undermined. And I think if you look at the reasoning in Chubb, the Third Circuit Chubb opinion, the Third Circuit says in a 14A claim that sounds in fraud, and 14A claims don't require fraud, of course, then the pleading requirements of the PSLRA applies. The key sections I think are cited in our brief, I think it's page 160 of the opinion where the Third Circuit mentions the statement I just described. Thank you, counsel. Judge Strickland, do you have anything else? Okay, Judge Cowan? Oh, wait. Counsel, in the event that the panel does agree with you, of course, we haven't conferred yet, but assuming that they agree with you, why shouldn't we allow the plaintiff to file an amended complaint that was denied below? Several reasons, Your Honor. This case already, despite the fact that all that happened substantively, was a motion to dismiss. We've had a long history. We've already had some years of litigation. As I mentioned, Mr. Monteverdi actually started this case in the Southern District of New York with one plaintiff. Then he moved down into Delaware. Then he amended his complaint. Then we said that his client's black standing, and he said, I'll bring someone else in. We consented to do that. Through all of this, although he amended the complaint, he did not indicate there was any fact that he needed to add, there was any theory that he needed to add. We had an argument before Judge Stark. The court has the transcript of that. He didn't say, here's what I want to do, and Judge Stark found that he had adequate understanding of what our claims were. We asked that the court deny, leave to amend because of the long history. Moreover, this is, as this panel knows, an issue that is within the sound discretion of Judge Stark. He sat with the case. He heard the oral argument, and I would respectfully submit there are no grounds to say that he abused his discretion because he considered it. If you look at the transcript, this was not an offhand remark. Judge Stark had studied. He said, I come here. I've been reading the proxy. He read the proxy very carefully. You can see that in the oral argument. He says specifically, based on the history here, I do not believe that there should be leave to amend. I would respectfully submit that was, I believe, correct, but certainly well within his discretion. All right. Thank you, counsel. Okay, we'll now hear a rebuttal from Mr. Monteverde. So I think at the end of the day, there's always confusion, right, with what is that we're challenging. And it's not the conduct. It's not the, that's where the fraud comes in play that the penitentiary to bring it in. It's not the creation of things. It's 1489 is soliciting a vote. The conduct violated was the solicitation of the vote with a proxy statement that we submit it's misleading. And let me tell you briefly, and this is from a 181. This is from the proxy. Morgan Stanley perform a discounted cash flow analysis, which is designed to provide an implied value of a company. And on the next page, they have a summary. That's the management case and the management sensitivity case management case $55 to $90 and sensitivity 29 to $47. And then if you look at the disclaimer we've been talking about on a 188. There's no reference that the sensitivity case was not used by the banker in fact it was you. What they said was we don't anticipate is happening. Well then why give it to the bank. And the ambition healthcare case. There is, oh well there they said it was equally likely. Well, maybe here they didn't say was equally likely. They certainly treated it as equally likely when you have an analysis that has to be sold the sensitivity case result and the management case result. But what I've really heard now is the reasons why they created the sensitivity case, they're not in the, in the proxy. We're actually talking facts. But let me remind this panel I know this panel knows this was a motion to dismiss, not a stormy judgment we haven't conducted discovery. That's the problem adversary brings up what is kind of a, an interesting point which is, would you be back if they didn't put it in. Don't they expose them, and if they didn't put it in and therefore not bring another view, particularly a negative one to light. Couldn't they be exposing themselves to securities litigation for another reason that they didn't give enough information. Absolutely not. There's no percent rule whatsoever. And I know this because I've heard as many times in Georgia's to disclose projections. Number one, under federal security laws. Number two, if you disclose projections they have to be reliable. And we're not saying that to be reliable. And I know we have that footnote of best estimates, best estimates that you believe in, it can be a best estimate of everything goes perfect best estimate of things not going so so so we're going so so they didn't say the sensitivity case. We think is plausible. Nowhere is that working there. They said we don't believe that's going to happen. Why give it to the banker to run an analysis and make it seem that you believe both the management case and the sensitivity case are plausible option. It's misleading the way it's presented your honor. Is that well, you know, counsel. I mean, they're, they're giving you as much as they got they give you, you're saying they shouldn't give that, but is that what the security laws all about we want you to have this disclosure. Yeah, this huge lot of don't want doesn't want misleading statements. We're not saying that you should have not giving it. They gave it. So now they got to live with the consequence when you get things you got to make sure you give things in an accurate and non misleading way here that's my, that's my point if we go with your position. We're encouraging them to say less. Rather than more is that is that correct. No, the question is, could the fairness opinion be obtained without a sensitivity case. I would like to see that's an important disclosure. That's not anywhere now we're really being coming as a parent here, because that's not discussed. They, they disclose both said that is correct. But it appears, they, the one they disclose that they don't believe in, they were, it was used to render a fairness opinion, and that timing is suspect, and that was the exact same fact pattern your honor in ambition healthcare exact same fact pattern. They're being treated equally likely. That's at the end of the day what happened. And we're at a motion to dismiss we haven't conducted any discovery. We are not suggesting disclose less disclose things accurately. It's about accuracy that's what that's 14 days about accuracy is not about volume is not about quantity is about quality, your quality disclosure matters. And whether it's Delaware country court federal court or anywhere else. No court wants on reliable information in the marketplace. We just saw what happened to GameStop last week. That's what happens when you have a reliable information disclose. I mean, we want the markets to work efficiently. I mean, that's, that's what we want. And you cannot do that. If you start giving bankers disclosures you don't believe in to render fairness opinions, so you can get the CEO to retire early on. Maybe selling is not the right time. It's a simple as that. Thank you, counsel, Judge Sirica Do you have anything more. No. And their oral argument today and very interesting case will take the case under advisement, and we'll ask the clerk to adjourn for the day. And I would just say, I would just like to thank all and I'm sure I speak here from Mr Monteverdi all members of the panel and, and, and the court for doing this in the middle of very trying circumstances, we, we litigants do appreciate the work of the federal courts. Well, that's nice to hear and we're glad you're flexible and are willing to do it this way and we really do appreciate all the effort you two gentlemen put in so thank you and we of course wish you well and good health and hopefully we'll be able to see you soon under better circumstances. We hope so. Thank you. We certainly echo Mr Clayton's remarks and thank you, everybody. Thank you. Yes, you too.